UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERESE LEE ANN DRAKE<br>(A-Number: 208-484-978),<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY<br>DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-02242-KES-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO<br>GRANT PETITION FOR WRIT OF HABEAS<br>CORPUS<br><br>(Doc. 1)<br><br>**7-Day Objection Period** |

Petitioner Sherese Lee Ann Drake ("Petitioner"), a federal immigration detainee proceeding pro se, initiated this action on March 23, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241, while in custody of Immigration and Customs Enforcement ("ICE") at the California City Detention Facility.  (Doc. 1).  Respondents are the unnamed Warden of the California City Detention Facility, the current or acting San Francisco ICE Field Office Director, the current or acting ICE Director, the current or acting Secretary of Homeland Security, and the current or acting United States Attorney General (collectively, "Respondents").  *Id.* ¶¶ 13-17.

For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted.

///

///

1

## I. **<u>Relevant Background</u>**

The relevant facts are taken from the petition and Respondents' answer. *See* (Docs. 1, 8). Petitioner is a citizen and native of Jamaica who was lawfully admitted to the United States on April 13, 2016, at New York, New York, with a B-2 "temporary visitor for pleasure/tourism" visa authorizing presence in the United States for a temporary period not to exceed October 12, 2016. (Doc. 8-1 at 25) (Form I-831, Record of Deportable/Inadmissible Alien ("Ex. 6")); *see* (Doc. 1 ¶ 18). Petitioner remained in the United States beyond the authorized period. *Id.*

While he was still eligible to remain in the United States, on April 14, 2016, Petitioner was arrested for a drug trafficking crime which resulted in a conviction on August 29, 2016, and imposition of a one-year sentence. (Doc. 8-1 at 12) (certified record of conviction); *see id.* at 27 ("[Petitioner] was convicted for [criminal possession of a controlled substance (cocaine)], Felony and sentenced to (1) One year in prison and license suspended for 6 months."); *id.* at 8 (April 14, 2016, DHS Notice to Detain, Remove, or Present Alien, noting Petitioner is "[p]aroled for criminal prosecution"), 10 (DHS Immigration Detainer – Request for Voluntary Action, noting that "[u]pon completion of the proceeding or investigation for which the [Petitioner] was transferred to your custody, DHS intends to resume custody of the subject to complete processing."), 28 ("On 10/03/2016, the New York Queens County Supreme Court convicted the [Petitioner] of criminal possession of controlled substance/narcotics and sentenced her to 1 year imprisonment. It appears the detainer was not honored, and the [Petitioner] was released upon completion of her sentence.").

Petitioner married a United States Citizen on November 14, 2022. *Id.* at 28. On January 26, 2024, Petitioner's husband filed on Petitioner's behalf a Form I-130 petition for alien relative and a Form I-485 application to register permanent residence or adjust status with the United States Citizenship and Immigration Services ("USCIS"). *Id.* Petitioner was paroled into the United States for criminal prosecution. *Id.* On August 20, 2025, following a second interview regarding Petitioner's application for adjustment, USCIS identified potential indicators for marriage fraud and concluded that the marriage was entered into for purposes of evading U.S. immigration laws. *Id.* Later that day, Petitioner was arrested by ICE as a B-2 overstay in Orlando, Florida, and was taken to the ICE-ERO Orlando office for processing. *Id.*; *see id.* at 25. Petitioner was issued an

initial Form I-862 Notice to Appear ("NTA") that was dismissed. *Id.* ("A review of the form indicates the allegations are incorrect. [Petitioner] was not admitted she was paroled and therefore 237(a)(1)(B) does not apply."); *see* (Doc. 8 at 2) ("[T]he first NTA was dismissed because it charged the wrong ground of removability.") (citing *"Declaration of Deportation Officer Ana/L. Juarez"* ("Juarez Decl.")).[1] Petitioner was thereafter issued a second NTA on September 30, 2025. *Id.* at 36-39 ("Ex. 9").

II.      **Governing Authority**

A.      **The Writ of Habeas Corpus**

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

B.      **Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)**

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

///

///

---

[1] Respondents' response to the petition refers to and relies on a declaration of Deportation Officer Ana/L. Juarez that does not appear in the record. *See* (Docs. 8, 8-1, 8-2).

### 1.   Full Removal Proceedings and Discretionary Detention (§ 1226)

The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

### 2.   Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides

4

that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan.

24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other

contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

## III.  **Exhaustion**

### A.  **Governing Authority**

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)).  The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).

"Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### B.    Analysis

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that Petitioner is subject to mandatory detention under 8 U.S.C. §§ 1225(b) and 1226(c), and Petitioner must remain incarcerated under that framework without individualized process.  *See* (Doc. 8 at 2).  Petitioner therefore lacks recourse through statutory or administrative means. *See Avilez v. Garland*, 69 F.4th 525, 533-34 (9th Cir. 2023) (*citing Jennings v. Rodriguez*, 583 U.S. 281, 303, 305-06 (2018) ("We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes" and "§ 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'")); *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'") (quoting *Laing*, 370 F.3d at 1000); *Chavez v. Noem*, -- F. Supp. 3d. --, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) ("The Court therefore finds the prudential exhaustion requirements waived for futility.  Because Petitioners need to show only one of the Laing factors applies, … the Court need not address the other factors.") (internal citation

omitted).

For these reasons and because Respondents do not argue Petitioner should be required to exhaust administrative remedies, waiver of the prudential exhaustion requirement for Petitioner's claim for habeas corpus relief is appropriate.

## IV.   **Discussion**

Petitioner asserts a single cause of action in her petition for violation of procedural due process under the Fifth Amendment to the U.S. Constitution.  *See* (Doc. 1 at 16-17).

### A.   **Procedural Due Process**

#### 1.   Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'"  *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V).  "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process."  *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'"  *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746).  "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'"  *Mathews*, 424 U.S. at 902 (citation omitted).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

9

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

2.    Analysis – Relevant Statutory Detention Authority

Respondents assert that Petitioner is subject to mandatory detention under § 1226(c). *See* (Doc. 8 at 2-3).

Another judge of this Court has addressed and applied the holdings of the key Supreme Court and Ninth Circuit rulings applicable here, and the undersigned adopts that analysis herein (*see Kakkar v. Chestnut*, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *4-5 (E.D. Cal. Dec. 15, 2025)):

> Under 8 U.S.C. § 1226(a)(2), DHS "may continue to detain" or "may release the alien" on bond or conditional parole, "pending a decision on whether the alien is to be removed from the United States." Such conditional release, however, may be revoked by DHS "at any time." 8 U.S.C. § 1226(b). The Board of Immigration Appeals ("BIA") has placed the following limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981).
>
> Alternatively, under Section 1226(c), DHS "shall take into custody any alien who is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(iii) of this title." 8 U.S.C. § 1226(c). This includes any "alien who is convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Under this provision, non-citizens may be released "only if the Attorney General decides ... that release ... is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation ... and the alien will not pose a danger to the safety of other[s] ... and is likely to appear for any scheduled proceeding." *Id.* at § 1226(c)(4). Thus, noncitizens detained under this category are not entitled to bond hearings as those detained under § 1226(a) are. *See Jennings v. Rodriguez*,

583 U.S. 281, 303–304 (2018) ("By expressly stating that the covered aliens may be released 'only if' certain conditions are met, § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions.") (emphasis in original).

Section 1226(c)'s mandatory detention requirement applies even if the government does not immediately detain a criminal non-citizen upon immediate release from a correctional facility. *See Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (finding that the Ninth Circuit's interpretation—namely, that criminal aliens not arrested immediately upon release from criminal custody are exempt from § 1226(c)'s mandatory detention and thus entitled to a bond hearing—is wrong). However, the Supreme Court expressly noted that its decision, "on the meaning of that statutory provision[,] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute." *Id*. at 420. Courts routinely review as-applied constitutional challenges to § 1226(c) detention. *See e.g., Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 WL 2744397, at *5 (N.D. Cal. March 31, 2023); *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025).

Here, on August 29, 2016, Petitioner was convicted under New York state law of criminal possession of a controlled substance in the third degree (cocaine) and received a one-year jail sentence. *See* (Doc. 8-1 at 12, 27).  Petitioner's second NTA provides that Petitioner is subject to removal under Section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act ("INA") for conviction of "any law or regulation … relating to a controlled substance" as well as under Section 212(a)(2)(C)(i) of the INA as an alien who "has been an illicit trafficker in any controlled substance[.]" *Id.* at 39.

Under § 1226(c), detention is mandatory where a noncitizen "is deportable by reason of having committed any offense covered" in § 1182(a)(2) or § 1227(a)(2)(B).  8 U.S.C. § 1226(c)(1)(A)&(B).  Section 1182(a)(2) provides that "[a]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of … (II) a violation of … any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible."  8 U.S.C. § 1182(a)(2)(A)(i)(II).  Section 1227(a)(2)(B) provides that "[a]ny alien who at any time after admission has been convicted of a violation of … any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other

11

than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i). Under New York Penal Law § 220.16, "[a] person is guilty of criminal possession of a controlled substance in the third degree when [s]he knowingly and unlawfully possesses[] … one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more[.]" N.Y Pen. Law § 220.16-12.

Petitioner's § 220.16-12 conviction following her guilty plea to the charge of "criminal possession of a controlled substance 3rd degree PL 220.16 12 BF (Cocaine)" (*see* Doc. 8-1 at 12) qualifies as an offense covered under both §§ 1182(a)(2) and 1227(a)(2)(B) such that she is subject to mandatory detention under § 1226(c). Because the record shows that Petitioner is subject to mandatory detention under § 1226(c) based on her conviction for violation of § 220.16-12, under the statutory framework above, Petitioner is subject to § 1226(c)(4)'s release provision and therefore is not entitled to bond hearings in the same fashion as those detained under § 1226(a).

Notwithstanding the undersigned's finding that Petitioner is subject to mandatory detention under § 1226(c), here, Petitioner raises a due process argument that her "ongoing prolonged detention without a [bond] hearing violates due process." (Doc. 1 at 16-17). As explained in the statutory scheme above, *Preap* "does not foreclose as-applied challenges … to applications of [§ 1226(c)]." *Preap*, 586 U.S. at 420; *Kakkar*, 2025 WL 3638298 at *5.

Therefore, the undersigned considers Petitioner's as-applied challenge to her detention raised in her due process claim.

### 3.   Analysis – Procedural Due Process

On Petitioner's as-applied procedural due process challenge to her continuing detention by immigration authorities, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and … [(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

"There is … a meaningful distinction between a challenge to an initial period of

12

detention, … and a challenge to *re-detention* after a court has previously granted release on bond pending immigration proceedings." *Carballo v. Andrews, et. al*, No. 1:25-cv-00978-KES-EPG, at 2025 WL 2381464, at *7 (E.D. Cal. Aug. 15, 2025) (emphasis in original). "'[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person.'" *Id.* (*quoting Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025)). "In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity 'to form the [] enduring attachments of normal life.'" *Id.* (*quoting Morrissey*, 408 U.S. at 482).

With these authorities in mind, the undersigned finds Petitioner has an underlying, continuing liberty interest in being free from detention. On April 13, 2016, when Petitioner entered the United States and applied for admission as a B-2 visitor for pleasure, she was paroled into the United States for criminal prosecution. (Doc. 8-1 at 36). Petitioner was convicted of the possession of a controlled substance charge on August 29, 2016. *Id.* at 12, 27. The record shows that DHS lodged a detainer with the State of New York that was not honored following Petitioner's sentence, and Petitioner was thereafter released into the United States. *See id.* at 8 (April 14, 2016, DHS Notice to Detain, Remove, or Present Alien, noting Petitioner is "[p]aroled for criminal prosecution"), 10 (DHS Immigration Detainer – Request for Voluntary Action, noting that "[u]pon completion of the proceeding or investigation for which the [Petitioner] was transferred to your custody, DHS intends to resume custody of the subject to complete processing."), 28 ("On 10/03/2016, the New York Queens County Supreme Court convicted the [Petitioner] of criminal possession of controlled substance/narcotics and sentenced her to 1 year imprisonment. It appears the [DHS] detainer was not honored, and the [Petitioner] was released upon completion of her sentence."). Although Petitioner was paroled into the United States for the purpose of criminal prosecution, and Respondents contend that DHS's immigration detainer was not honored by the State of New York following the conclusion of criminal proceedings against Petitioner, Petitioner remained released from the time she completed her one-year jail sentence on an unspecified date in 2017 for a significant amount of time—approximately eight years—during which time she was

married in November 2022, raised two U.S. citizen children, and obtained an authorization to work and a social security card. *See* (Doc. 1 ¶ 23). While Petitioner's spouse applied for a Form I-130 petition for alien relative on her behalf as well as a Form I-485 application for adjustment of status on her behalf in January 2024 that was ultimately denied in August 2025, Respondents' decision not to detain or proceed with removal proceedings against Petitioner from the time she was released from state custody and filed her immigration-related relief constitutes a tacit decision to permit Petitioner's release from immigration custody and acceptance that she was not a flight risk nor a danger to the community.

Indeed, Respondents do not assert that Petitioner was subject to any conditions of release, nor do they proffer facts permitting the drawing of any reasonable inference that Petitioner is a danger to the public or a flight risk. (Doc. 8); *see, e.g., Kakkar*, 2025 WL 3638298, at *6 (finding petitioner who completed three-year term of supervised release without incident held a liberty interest in freedom from detention under the Due Process clause); *id.* at *5 ("in these cases, ICE did not immediately detain the petitioners upon their release from prison. … Instead, the petitioners successfully reintegrated into their communities for several years before being detained pursuant to § 1226(c)."); accord *Carballo*, 2025 WL 2381464, at *6 ("The courts in [*Perera* and *Pham*] found that the petitioners possessed a protected liberty interest arising from their several years of post-conviction freedom[.]"). Put simply, Petitioner was released from state custody following service of her jail sentence and six-month license suspension and was arrested years later by ICE and detained pending removal proceedings. *See* (Doc. 1 ¶ 23) ("I finished my sentence and was also on probation for [six] months."); (Doc. 8-1 at 12) (certificate of disposition indicating Petitioner was sentenced to one-year imprisonment and received a six month license suspension).

The undersigned therefore agrees with other courts and other judges of this Court that a noncitizen who sustains a conviction for an aggravated felony and who successfully serves their sentence, including terms of court-imposed supervision without incident, maintains a liberty interest in their freedom that implicates protections under principles of procedural due process. *See Kakkar*, 2025 WL 3638298, at *5 (discussing, *inter alia*, *Perera*, which "involv[ed] a legal permanent resident, convicted of possession with intent to distribute controlled substances, released

14

from prison in 2015, and detained by ICE for the first time in April 2021" but "successfully reintegrated into their communities for several years before being detained pursuant to § 1226(c)" and succeeded in "raising [an] as-applied due process challenge[] to [his] detention without a bond hearing[.]"); *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process."); *Pham*, 2023 WL 2744397 at *6 (finding liberty interest for petitioner who was released from prison in 2015 and detained by ICE for the first time in 2023); *Perera*, 2021 WL 2400981, at *2, 5 (finding petitioner, who was convicted of possession with intent to distribute controlled substances, released from prison in 2015, and detained by ICE for the first time in April 2021, has a "grave" liberty interest). *Cf. Daley v. Andrews*, No. 1:25-cv-00922-KES-CDB, 2026 WL 101840, at *9-10 (E.D. Cal. Jan. 14, 2026) (finding a petitioner mandatorily detained pursuant to § 1226(c) did not have a protectible liberty interest because he had remained in continuous custody and never released on supervision).

Because Petitioner has shown she has a protected liberty interest to remain free from detention based on her release from state custody for approximately eight years without incident, the undersigned must determine what process is due before the government may terminate that liberty interest. To determine this, the undersigned considers the following factors articulated in *Mathews*: "[(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context); *id*. at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has shown she has a significant private interest in remaining on release from detention. She had been released from state custody for approximately eight years without incident prior to her immigration detention. She alleges that he has lived in the country

supporting her family of two U.S. citizen children and has obtained an authorization to work and a social security card, and Respondents do not assert or otherwise show that Petitioner was subject to any conditions of supervision of which she has violated or committed any additional crimes while on release, notwithstanding the denial of her application for adjustment in which USCIS identified potential indicators for marriage fraud.  (Doc. 1 ¶ 23); *see* (Docs. 8, 8-1 at 28). Petitioner's continued liberty interest in remaining on release is undermined by her immigration detention without a bond hearing. *Doe*, 787 F. Supp. 3d at 1093-94 ("Freedom from imprisonment is at the core of the Due Process Clause….  The lengthy duration of his conditional release as well as the meaningful connections [he] seems to have made with his community during that time create a powerful interest for [him] in his continued liberty.").

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable here where she has not received any bond or custody redetermination.  *Id*. at 1094; *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Because there were no procedural safeguards to determine if Petitioner's detention was justified and Respondents proffer no facts indicating whether Petitioner was subject to any conditions of supervised release of which she has violated or that there are any change in circumstances while Petitioner was on release sufficient to justify Petitioner's re-detention, the probable value of the additional procedural safeguard of a bond hearing to determine whether Petitioner is a flight risk or a danger to the community is high such that this factor weighs in favor of granting a bond hearing. *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *A.E.*, 2025 WL 1424382 at *5; *Ramazan*, 2025 WL 3145562, at *6.  Therefore, this factor weighs in favor of granting a bond hearing.

Third, the government's interest in detaining Petitioner without a bond hearing is low. *Doe*, 787 F. Supp. 3d at 1094 (citation omitted); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-

16

detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."); *see Carballo*, 2025 WL 2381464, at *8 ("The government has thus far not argued or identified any new factual circumstances in the past five years that would affect such a determination."); *Kakkar*, 2025 WL 3638298, at *7 ("The government may have a significant interest in protecting the public from dangerous criminal aliens. However, such argument is undermined somewhat by the fact that Respondents waited four years to arrest the Petitioner and have not identified changed circumstances that now justify his arrest."). "The effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094. Therefore, any additional burden from requiring the government to seek a bond hearing before it may re-detain Petitioner does not outweigh her liberty interest and the risk of erroneous deprivation. Accordingly, this factor weighs in favor of granting a bond hearing.

In sum, the undersigned finds that, under *Mathews*, Respondents have violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution through her arrest in August 2025 and continuous and continuing detention thereafter.

### B.     Relief

Respondents do not assert that Petitioner is a flight risk or a danger to the community, do not show whether Petitioner is subject to any conditions of supervised release, and have not identified any material changed circumstances since Petitioner was released under supervision. Accordingly, the undersigned finds and will recommend that Respondents be ordered to afford a bond hearing to Petitioner consistent with the holdings in the decisions noted above (*Kakkar*, *Perera*, and *Pham*). *See Prior v. Andrews*, No. 1:25-cv-01131-JLT-EPG (HC), 2026 WL 698801, at *2 (E.D. Cal. Mar. 12, 2026) (adopting in part findings and recommendations to grant petition for writ of habeas corpus but declining to order the petitioner's immediate release) (citing *Kakkar*, 2025 WL 3638298, at *6-7, *Perera*, 2021 WL 2400981, at *4, and *Pham*, 2023 WL 2744397, at *1-2). Immediate release is not warranted because immigration authorities never previously detained and released Petitioner on any finding that she was neither a flight risk nor danger to the community. *See id*.

Further, the undersigned will recommend the government bear the burden at a bond hearing

17

of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight or that there is a material change in her removal situation that would justify her re-detention. *See id*. at *3; *Carballo*, 2025 WL 2381464, at *9; *Kakkar*, 2025 WL 3638298, at *6; *Pham*, 2023 WL 2744397, at *7.

## V.      **Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED

2. Respondents be ORDERED to hold a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community or that there is a material change in his removal situation such that physical custody is legally justified.[2]

3. The Clerk of the Court be DIRECTED to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court

---

[2] The undersigned also recommends the following:

If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here, SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondents SHALL provide a bond hearing in the timeframe required by law.

may require a response within a shorter period if exigencies of the calendar require."). Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **June 3, 2026**

_____
UNITED STATES MAGISTRATE JUDGE